UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR MOLINA,<br><br>                Plaintiff,<br><br>v.<br><br>DOLLAR TREE STORES, INC.,<br><br>                Defendants. | Case No.  CV 12-1428- BRO (FFMx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL** |

## I.

## INTRODUCTION

On October 30, 2012, Defendant Dollar Tree Stores, Inc. ("Dollar Tree") removed this action for damages, alleging, among other things, a violation of:  (1) California Business and Professions Code section 17200; (2) California Labor Code sections 510, 1194,  1198 for failure to pay overtime compensation; (3)  California Labor Code sections 226, for failure to provide itemized wage statements; (4) California Labor Code sections 201, 202, and 203, for failure to provide wages when due; and, (5) California Labor Code section 2699.3, Private Attorney General Action ("PAGA").  (Dkt. No. 1.)  The court has federal diversity jurisdiction pursuant to 28 U.S.C. section 1332. The parties waived their right to a jury trial.

On November 5 through November 8, 2013, and November 19, 2013, the Court tried this matter.  After consideration of the parties' trial briefs, the witnesses and evidence presented by both sides at trial in the case, as well as arguments of counsel, and Plaintiff's objections to Defendant's Proposed Findings of Fact and Conclusions of Law, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## II.

## FINDINGS OF FACT

A. Admitted Facts

Plaintiff Oscar Molina and Defendant Dollar Tree admitted certain facts, which the Court finds as true.

1. Dollar Tree operates more than 4,000 retail stores in the United States and Canada with over 360 stores in California.

2. Dollar Tree sells a variety of items at a one dollar price point in many of its stores.

3. Dollar Tree reports revenues in excess of $6.6 billion.

4. Molina began his employment as a non-exempt associate in 2004 and was promoted to the Store Manager position in December 2005.

5. Molina worked for Dollar Tree as a Store Manager in the Westminster, California store from July 20, 2008 through February 16, 2011 and from May 12, 2011 until December 31, 2011.

6. Dollar Tree terminated Molina's employment on December 31, 2011.

7. Molina earned an annual salary ranging from $46,350 to $47, 277, as a Store Manager.  This amount did not include any bonuses.

8. From July 5, 2007 to July 5, 2008, Molina earned an annual base salary of $45,000, which did not include bonuses.

---

[1] Any finding of fact which constitutes a conclusion of law is hereby adopted as a conclusion of law.

9. From July 6, 2008 to July 11, 2009, Molina earned an annual base salary of $46,350, which did not include bonuses.

10. From July 12, 2009 to December 31, 2011, Molina earned an annual base salary of $47, 277, which did not include bonuses.

11. Dollar Tree classified Molina as an exempt employee during his tenure as a Store Manager.

12. During Molina's tenure as a Store Manager, he was expected to schedule the hours he would be at the store and available.

B. Trial Testimony

The following summarized testimony reflects the testimony presented to the Court in the order in which it was presented.

*1. Oscar Molina*

Molina would schedule employee hours through Dollar Tree's Compass scheduling program. In so doing, he would take into account sales per employee hours. Dollar Tree limited the number of employee hours based upon projected sales. David Peachey would review Molina's scheduling of employee hours. Molina spent time completing schedules, counting employee tills and responding to emails. In Exhibit 14, Molina certified that he spent no more than 35 per cent of his time on non-exempt duties, that is, non-supervisory duties such as receiving stock, distributing, storing and re-stocking product, preparing the store and cashiering.

A representative from Dollar Tree telephoned Molina in March 2009. The representative asked Molina why he was certifying, "no" on his certification of duties.

3.

Previously, in February 2008, Dollar Tree employee Reed Balderas telephoned Molina and asked him why he was stating "no" on his duty certifications.  During his deposition, Molina testified that he did not remember the second telephone call of March 2009.

Exhibit 12[2] is Molina's July 2008  to July 2009 performance evaluation from his supervisor, Matt Rodrigues.  His overall rating was "meets expectations".  Molina did not meet his budgeted payroll hours.  His appraisal cautioned him to "lead by example, Don't be the first one to leave or not show at a work party."  Exhibit 5 is Molina's performance appraisal from July 2009 to July 2010.  The appraisal stated that Molina missed his payroll budget by $4 and detailed Molina's need to work on his "first-of-the-month displays" as well as become more aggressive in merchandising.  Exhibit 6 is Molina's performance appraisal from July 2010 to July 2011, given to Molina by Dollar Tree District Manager Matthew Franz.  Molina received an overall rating of "unsatisfactory".   Exhibit 7 details discipline imposed upon Molina by Matthew Rodrigues based upon Molina's unsatisfactory performance during the period from December 2010 to January or February 2011.  The appraisal specified that Molina had changed his schedule and was absent from work without notifying his supervisor, in violation of company policy.  Exhibit 8 is an email to Reed Balderas.  It states that Molina left the store on three days without notifying his superior, did not report for work on two days and worked less than one-half of his

_____

[2] The Court refers only to exhibits which were received in evidence.

4.

shift one day.

Molina lied on his resume, introduced in evidence as Exhibit 1. Specifically Molina did not complete four years of high school and did not graduate from high school. Molina also answered "no" when asked whether he had ever been convicted of a felony. Molina was previously convicted of a felony.[3] When previously reviewing Exhibit 12, Molina did not challenge the accuracy of the transactions; however, when testifying at trial, Molina challenged the accuracy of Exhibit 12.[4] The Court accepts the accuracy of Exhibit 12.

Molina also falsified the initials of another Dollar Tree employee and took the deposit to the bank by himself, in violation of company policy. Comparing Exhibits 41, 251, 252, 253 and 254 demonstrates that Molina lied when he stated he worked alone on December 29, 2008 because Richard Aguilar initialed the deposit slip along with Molina. Molina lied when he maintained that he worked alone, took the deposit to the bank by himself and forged Aguilar's initials. Exhibit 254 is a cash register transaction report showing Aguilar signed on to a cash register. Molina admitted that Dollar Tree employees, such as Anay Gomez or Richard Aguilar, forgot to clock in. *See* Exhibit 123. Molina admitted that he might have left for lunch and not returned

---

[3] Molina claimed that his parole officer told him that he (Molina) was not required to disclose his prior felony conviction because it was over 7 years old. In any event, Molina's conviction was not 7 years old, rather it was five years old. The Court finds this testimony not credible.

[4] The Court finds Exhibit 12 to be accurate and finds Molina's testimony to the contrary not credible.

until the end of his shift. He claimed that this conduct occurred only when he was

"going through his troubles."

Molina also falsely testified that he requested a leave of absence from Dollar

Tree because he was having emotional problems with his girlfriend.  Previously,

Molina was asked in deposition whether his relationship had anything to do with his

requesting a leave, to which Molina responded, "not really."  The Court credits Mr.

Molina's deposition testimony, not his trial testimony.

Molina created a resume, Exhibit 3, detailing his job experience at Dollar Tree.

Molina describes his job duties as managing up to 40 employees at peak times,

overseeing "all aspects of the business", "training associates", "delegation of tasks,"

ordering, scheduling associates, inventory control, as well as the "overall presentation

and maintenance, protecting all company assets."  While at Dollar Tree, Molina hired

approximately 100 people, the majority of which he interviewed by himself.  Molina

also assigned job priorities to his associates.  The employees numbered between 12

and 40; Molina had discretion to assign the number of associates he felt appropriate,

within the amount of hours.  In scheduling hours, Molina went over the allotted hours.

Molina's store manager manual stated his responsibility to plan, delegate and follow

up on all activities within the store.

Molina admitted using his judgment to schedule workers, including changing

cashier hours, freight processors, and sales recovery personnel.  Molina also trained

and cross-trained these employees.  Exhibit 197, for example, lists 25 employees  with

362.39 employee hours.   Molina also ordered freight.  Dollar Tree required Molina to plan, delegate and follow up on all activities within the store.  Exhibit 197 also details 75 hours allotted to receipt and merchandise a load of freight consisting of 97 cartons. Molina was also responsible for reviewing a "break variance report" and to schedule employees in a fashion so that they could take their breaks.  With the Appleseed planner, Exhibit 127, Molina scheduled various employees to fill back stock, fill impulse drinks, stationery, housewares, u-boats and other tasks.  Molina also evaluated, rated and disciplined his employees, as reflected in Exhibit 60.

### 2.  McDearmon Testimony

Mr. David McDearmon worked as the Director of Human Resources for Store Operations for Dollar Tree since 1998.  His team oversees staffing support as well as manpower planning support. His team provides support to the district managers with soliciting and screening store manager level candidates. The team also assists regional directors with soliciting and screening district manager level candidates, among other tasks. Molina would have completed both assistant manager training as well as store manager training.  The training consists of learning the operational management aspects of the store which is the front end cash handling and so forth, learning the backroom freight flow processing, and then dealing with the general merchandising, sales component of the store. When Molina was promoted, there was less specific training from the assistant manager to manager position. Dollar Tree implemented the revised training to decrease the number of unsuccessful store managers.

Exhibit 19 reflects the store manager certification process.  When a store manager listed 'No" in response to the question  whether they were spending more than 50 per cent of their time on non-managerial tasks, they would be required to explain the reason.  McDearmon directed his team to follow up with the managers who responded "no" and have an "open conversation" with them to discover the problem.  After discussing the problem, the two would "partner" with the right person to "alleviate the problem." However, discipline would not be tied to certifying "no", rather whether the person was appropriately managing his store.

Exhibit 15 reflects a log detailing a conversation McDearmon's, along with his team member, had with Molina.  They asked Molina why he certified "no" on his report.  Molina responded that he believed that his payroll hours were the principle reason he spent his time on non-managerial tasks.  Exhibit 16 details a call between Dollar Tree employee Kathryn Johnson and Molina on March 18, 2009 discussing why Molina certified "no" on his report, representing to spend more than 50 per cent of his time on non-managerial tasks.  Exhibit 190 reflects Dollar Tree records, including performance evaluations, showing that on February 8, 2011, Molina, despite being scheduled to work from 7:00 a.m. to 5:00 p.m., failed to notify his supervisor that he would be missing a conference call.

*3.  David Peachey Testimony*

Mr. Peachey served as a district manager for Dollar Tree from 2007 to 2009. His district covered Molina's store. His duties included developing store managers.

8.

As a result, he would visit the store managers, review store operations, review company programs, and coach managers. Molina requested additional payroll hours from Peachy.  In order to authorize additional payroll hours, the store manager was required to justify his need, which would be evaluated by the district manager. Depending upon whether the district manager had additional hours, he could approve the request or present the request to the regional manager who would make a decision whether to grant the store additional hours for special projects. Peachey cannot remember whether he spoke to Molina about certifying "no" or expressing displeasure with Molina's certifications.  Peachey communicated Dollar Tree's expectation that Molina work 45 hours per week as a store manager.  In speaking with Molina, Peachey believed Molina understood the policy.  Molina was to schedule himself for 50 hours per week and take a one-hour lunch break.  Peachey communicated this policy to Molina. Peachey would expect that a store manager spend 30 hours per week on managerial duties.

Between July 2008 until early 2009, when Peachey no longer served as the district manager, there were occasions when Molina was not in the store when he was scheduled to be there. For example, one time Peachey called the store looking to speak with Molina, but was told that Molina had left to pick up his children from school. Molina was scheduled to be in the store at that time.  This happened more than once and Peachey told Molina it was okay.

9.

Peachey had conversations with Molina regarding Molina's complaint that he did not have enough payroll hours.  Peachey would calculate the needed hours for Molina's store.  Peachey would also conduct iVisits, where he would go to the Westminster store when Molina was present, walk through the store and discuss store operations, areas for improvement and areas where the store was performing well. Afterward, Peachey would follow up to ensure that the store manager was focusing on improving the store operations.  Exhibits 45-47, 50, 52-58 record iVisits with Molina at the Westminster store.

### 4.  Jamie Reyes Testimony

Mr. Reyes served as the part time assistant store manager for the Dollar Tree store in Westminster, when Molina was the store manager. Reyes worked with Molina and more often than not, Molina would not complete his scheduled shift.  Molina would leave the store a "couple of hours early."

### 5.  Leticia Salgado Testimony

Ms. Salgado is a store manager in training, but worked with Molina from 2009 to 2011 as his assistant manager.  Sometimes her shift overlapped with Molina's shift. When Molina worked with Salgado, Molina left the store before the end of his shift. Salgado estimated that if her shift overlapped with Molina's shift four times in one week, Molina would leave early two to three times in the week.  Salgado characterized Molina's behavior of leaving early as "routine", with Molina typically saying he was going to make the bank deposit and then not return. Molina instructed Salgado to tell

the district manager that he was at lunch.  Molina also took lunches.  Molina would also step outside of the store to smoke a cigarette.

### 6. David Flores Testimony

Dollar Tree employs Mr. Flores as a district manager and in 2011, he supervised the Westminster Dollar Tree where Molina served as the store manager. Mr. Flores investigated a bank report of money missing from a deposit in December 2011. Flores received an email of an overage on one deposit ($40) and shortage on another ($600).  Flores informed Molina of the shortage and Molina expressed surprise, stating that he and Dollar Tree Associate Adrian had gone to the bank to make the deposit. Flores then went to the bank to investigate further. When Flores returned, he again spoke with Molina.  At that time Molina admitted that he (Molina) had forged Adrian's initials and had taken the deposit to the bank by himself, in violation of Dollar Tree policy. On another occasion, Flores visited the Westminster store during Molina's scheduled shift.  Molina was not at the store and had left early. Molina stated it would never happen again.

### 7. Steven Pearson Testimony

Mr. Pearson works for Dollar Tree as its Director of Productivity and Store Services, and has done so for the past nine years.  Mr. Pearson achieved a Bachelor's degree in management from Old Dominion University in Virginia and has worked in retail sales for over 20 years.  He worked for 20 years in a grocery chain, before moving to Dollar Tree.  At one point, Pearson served as a retail labor analyst, where

he supported the labor scheduling aspects of the business in terms of through systems and through data reporting and information.  In his previous employment, he used a precursor to Dollar Tree's Compass system, Timera. He performed that job for 13 months.

Thereafter, Pearson worked for six months within one of the retail stores doing time studies and process analysis.  Pearson defines "time study" as the evaluation and observation of how processes or activities are performed at the store level, measuring how long it takes to perform a particular activity.  One can complete a time study by simply timing an associate completing the task or incorporate a "time-and-motion study," where one looks at the various steps putting all the building blocks together to create a standard on how long it takes to accomplish tasks.  Pearson assisted Dollar Tree in cross-referencing sales data and transaction data to forecast sales estimates. In addition, Pearson used the sales forecasts to determine a "productivity target" or "sales per employee hour" target.  The sales per employee hour divided into their forecast sales yields the number of permissible payroll hours.  Pearson takes the sales information, using Compass to help generate those numbers, and then applies the sales-per-employee-hour productivity factor based on that sales projection.  Pearson believes those predictors are a realistic predictor of the number of hours the store needs to operate.

According to Pearson, a manager is permitted to modify schedules, switch shifts, or create shifts to meet its business needs.  Within 48 hours of freight arriving at the

12.

store, the store manager receives a "DC Delivery Prep Sheet," to assist with arrival of the freight truck.  The sheet details the categories of merchandise the store is to receive off of the truck.  It also provides the number of  "u-boats" or carts necessary to transport the freight, as well as the "stock rate".  The "stock rate" is the amount of employee time necessary to unload the freight.  Pearson assisted in the development of the stock rates, which vary depending upon the department, but are based upon his timed studies. In calculating the stock rates, Pearson watched "hundreds of associates doing work and thousands of cases."  These estimates are not ambitious, but based upon an average person with an average skill set.

In addition, Dollar Tree created Appleseed, a resource for managers  for processing freight which implemented the planning principles used by the more successful store managers in order to spread "best practices" throughout the company.  Prior to Appleseed, store managers would use a 20-case-per-hour estimate for unloading freight.  Each of the best practices materials provided to store managers states that the store manager is responsible for delegating tasks to assistant managers or hourly store employees.

### 8.  Paul Jones Testimony

Mr. Jones serves as Dollar Tree's Vice President of Applications and before that, served as the Director of Application Development.  In that capacity, Jones was responsible for building and maintaining all Dollar Tree information systems, including freight flow and freight delivery productivity.  Exhibit 121 details the

13.

freight deliveries to the store Molina managed, during July 2008 through December

2011.  Exhibit 254 lists the sale transaction for Richard A. on 12/29/2008 at 1:59 in

the afternoon.

### 9.  Jeff Whitmore Testimony

Mr. Whitmore works for Dollar Tree as its Manager of Field Compensation.  In

that capacity, Mr. Whitmore is in charge of data extraction and reporting information

within the computer system.  Specifically, Mr. Whitmore extracts data points and fills

the data into reports requested.  Exhibit 148 lists the hours worked by assistant

managers and hourly employees in the store Molina managed.  Exhibit 145 indicates

that the between July 20, 2007 and December 31, 2011, there were zero hours where

Mr. Molina was not spending 80 hours supervising.

### 10.  Reed Balderas Testimony

Mr. Balderas is Dollar Tree's Human Resources Manager.  Between 2008 and

2011, Balderas once spoke with Molina regarding Molina certifying "no" on his

weekly manager certifications as to his duties.  Mr. Balderas doesn't remember

specifically, but asked Molina why he certified "no."  Molina responded, but Balderas

did not communicate that response to anyone.  To Balderas's knowledge, Molina was

not disciplined in any way as a result of his conversation with Balderas.  Nor did

Molina have his pay reduced in any way as a result of the conversation.  In addition,

Balderas denies that Molina ever told him that he (Molina) had been convicted of a

felony or spent five years in prison.

14.

### 11. *Kathryn Johnson Testimony*

Ms. Johnson as worked as Dollar Trees HR Director for Logistics for three

years.  In that capacity, she spoke with Molina regarding his certification of "no" on

his weekly reports, as well as Molina failing to check anything on certain reports.

Molina responded that he wasn't sure what he should be checking, and would follow

up with his district manager.  To Johnson's knowledge,  Molina was not disciplined in

any way as a result of his conversation with Balderas.  Nor did Molina have his pay

reduced in any way as a result of the conversation.

### 12. *David Bevilacqua Testimony*

Mr. Bevilacqua works as the Manager of Field Training and Development for

the region encompassing the Westminster store which Molina managed.  Exhibit 108

shows email "invitations" to a training session which store managers were expected to

attend regarding Appleseed Best Practices.

### 13. *Ryan Prettyman Testimony*

Mr. Prettyman is employed for Dollar Tree as its Zone Sales Director for the

area which includes the Westminster store.  Dollar Tree vests every store manager

with discretion to organize over one-half of the end caps in the store.  Dollar Tree asks

that some end caps remain uniform, but the rest are left to the discretion of the store

manager.  Store managers also have discretion to place items together to increase

sales.  Seasonal items are located in the front of the store and arranged by the store

manager.  A store manager also chooses which items to order, and in what quantities

1  for certain areas called "flex space."

2      C. Credibility Determinations

3

4      Ninth Circuit Model Jury Instruction 1.11 provides guidance to jurors when

5  assessing credibility.  The factors include:  (1)  the opportunity and ability of the

6  witness to see or hear or know the things testified to;  (2) the witness's memory; (3)

7

8  the witness's manner while testifying; (4) the witness's interest in the outcome of the

9  case and any bias or prejudice; (5) whether other evidence contradicted the witness's

10

11 testimony; (6) the reasonableness of the witness's testimony in light of all the

12 evidence; and, (7) any other factors that bear on believability.  Ninth Cir. Model Jury

13 Instr. 1.11 (Civil) (2007).  The Court finds these factors helpful in assessing the

14 credibility of the witnesses.

15

16     First, the Court finds Plaintiff Molina's testimony to be *not credible*.  The Court

17 observed his demeanor while testifying.  Mr. Molina lied about his felony conviction,

18 seeking to blame his parole officer for his failure to detail his prior felony conviction.

19

20 Mr. Molina also admitted that he lied with respect to his education, as he did not

21 graduate from high school.  Mr. Molina's memory was selective; he remembered

22 certain things when asked by his attorney, but could not remember when asked by

23

24 opposing counsel.  Mr. Molina admitted to forging his associate's signature, and when

25 Mr. Molina stated that he worked alone on December 29, 2008.  The Court observed

26

27 Mr. Molina's demeanor and found his to be evasive at times.  His memory was

28 selective.  In addition, Mr. Molina has an interest in the outcome of the case.  As a

result, the Court finds Mr. Molina to be not credible.

In contrast, the Court finds the testimony of  Mr. Molina's associates, Jamie Reyes and Leticia Salgado to be *credible*.  The Court observed their demeanor and found them to be credible witnesses.  Although they may still work for Dollar Tree and with respect to Ms. Salgado, were given a benefit, their testimony is mutually corroborative.  Each witness testified in a straightforward manner.  Accordingly, the Court deems their testimony to be *credible*.

With respect to the other Dollar Tree representatives, the Court finds their testimony to be *credible*.  The Court observed the demeanor of the witnesses, and found them to be consistent with the documents and with each other.  The witnesses responded to questions in a straightforward and forthright manner.  They presented as an unbiased witness who simply answered the questions.  They held no bias against Mr. Molina.  Accordingly, the Court believes the testimony of the Dollar Tree employees, specifically Mr. McDearmon, Mr. Peachey, Mr. Flores, Mr. Jones, Mr. Whitmore, Mr. Balderas, Ms. Johnson, Mr. Bevilacqua and Mr. Prettyman.

### III.

### CONCLUSIONS OF LAW

Plaintiffs alleged five state causes of action against Defendant: (1) unfair competition in violation of California Business & Professions Code section 17200, *et seq.*; (2) failure to pay overtime compensation in violation of California Labor Code sections 510, 1194, and 1198; (3) failure to provide accurate itemized statements in

violation of California Labor Code section 226; (4) failure to provide wages when due in violation of California Labor Code sections 201-203; and (5) a violation of California Labor Code section 2699.3, PAGA. In essence, Plaintiff premises his five causes of action on an allegation that Dollar Tree mischaracterized "Store Managers" as "exempt" employees. "An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).

**A.** Plaintiff Failed to Prove his Case-in-Chief.

*1. Plaintiff's testimony was not credible*

According to Federal Rule of Civil Procedure 52(a)(6), a "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility" unless there is clear error. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *see also McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (according "great deference to the trial court's opportunity to assess the credibility of witnesses").

Here, Mr. Molina was not credible.  He lied on multiple occasions, for example his education, his criminal history, working alone and the December 29, 2008 bank deposit incident.  Thus, his claims that he consistently worked more than 35 per cent on non-exempt tasks, never took a lunch break and was coerced into certifying yes on his duty certifications are rejected.  In contrast, the other witnesses whom the Court found credible directly contradicted Mr. Molina's testimony.  For example, Jamie Reyes, and Leticia Salgado testified that Mr. Molina routinely left work early and took lunch. Mr. Balderas testified the Mr. Molina never told him that he (Molina) had been convicted of a felony.  As Plaintiff's case consisted predominately of Mr. Molina's testimony and documents which he created, he has failed to meet his burden of proof.

> ### 2. *Plaintiff failed to prove that He Worked Overtime or was not Provided Meal Periods.*
>
> > **a.** Plaintiff did not provide competent or credible evidence that he worked overtime hours.

Under California law, an employee is presumptively entitled to overtime compensation for all hours worked in excess of eight hours per day or forty hours per week.[5] Cal. Lab.Code § 510(a); *see Lopez v. United Parcel Serv., Inc.*, No. C08-05396 SI, 2010 WL 728205, at *3 (N.D. Cal. Mar. 1, 2010) (citing Cal. Lab. Code § 501(a)).

California law provides that an employee may provide estimates of time worked

---

[5] "Federal law interpreting *similar components* of the FLSA exemptions is properly considered as persuasive authority, even if *not binding* on this court." *In re United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1015 (2010).

to prove the existence of unpaid overtime hours and missed meal periods. *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1377 (2007). In *Eicher* the Court explained that

> Although the employee has the burden of proving that he performed work for which he was not compensated, public policy prohibits making that burden an impossible hurdle for the employee. [Citation.] '[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a ... difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation.... In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'

*Id.* (quoting *Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (Ct. App. 1988)).

"[O]nce an employee proves he or she 'has in fact performed work' that was improperly compensated, and presents enough evidence to allow an inference as to the amount of this work, the burden shifts to the employer to prove the precise amount of work performed or to negate the inference drawn from the employee's evidence." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1189 (2008) (citation omitted).

20.

Plaintiff argues that he has satisfied the burden of his case in chief by demonstrating that his minimum hours worked were those scheduled in Defendant's Compass system, which hours exceed eight in a workday. (Dkt. No. 156 at 1.) Plaintiff relied on the Compass system records at trial and argues that Defendant "failed to meet its burden of rebutting the inferences raised by Plaintiff's evidence or prove the precise amount of hours worked." (Dkt. No. 156 at 6.) Accordingly, Plaintiff argues that the Compass system is the best evidence of hours worked and *Amaral* applies. *See Hernandez*, 199 Cal. App. 3d at 727 ("[I]n cases such as the present one, where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages.").

First, Molina controlled the creation of the Compass schedules.  In addition, according to the testimony of Peachey, the 50 hours per week which Molina was expected to work included a one-hour lunch break each day.  The Court credits the testimony of Peachey.  Additionally, Ms. Salgado testified that she never saw Molina work his entire shift when her shift overlapped with his. The Court credits Salgado's testimony.  Thus, Plaintiff failed to meet his burden of proof.

        **b.** Plaintiff did not establish that he was not provided an opportunity to take meal and rest breaks

"Cal. Lab. Code § 512(a) requires employees working more than five hours in a shift must be relieved of all work duties for 30 minutes." *Brinker Rest. Corp. v. Super.*

*Ct.*, 53 Cal.4th 1004, 1040-1041 (2012).

An employer satisfies this obligation if it "relieves its employees of all duty, relinquishes control over the activities and permits [employees] a reasonable opportunity to take an uninterrupted 30-minute break and does not impede or discourage them from doing so." *Id*. at 1040. "[T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id*.

"If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided. This is consistent with the policy underlying the meal period recording requirement, which was inserted in the IWC's various wage orders to permit enforcement." *Brinker*, 53 Cal. 4th at 1053.

"An employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief. Rather, as the Court of Appeal properly recognized, the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it." *Brinker*, 53 Cal. 4th at 1053.

As stated above, the Court believed the testimony of Peachey that the schedule assumed a one-hour lunch break daily. Moreover, the Court disbelieves Molina's testimony that he never took lunch breaks. Rather the Court credits the testimony of

Salgado, who testified that Molina routinely took a lunch break. Therefore, Plaintiff

has failed to establish that he was not provided an opportunity to take meal and rest

breaks.

> **c.** Defendant carried its burden to show Molina was properly classified as
> an exempt employee.

"Exempt" employees are not bound by the wage and hour restrictions of

California Labor Code section 510 and as such are not entitled to overtime pay. Wage

Order 7-2001; *see also Lopez*, WL 728205, at *3 (N.D. Cal. Mar. 1, 2010) (quoting

Cal.Code Regs. tit. 8, § 11090(1)(A)(1)). An employer who claims that an employee

is exempt from overtime compensation bears the burden of proving as an affirmative

defense that the exemption applies. *Gomez v. Lincare, Inc.,* 173 Cal.App.4th 508, 516

(Cal. Ct. App. 2009). "Exemptions are narrowly construed against the employer and

their application is limited to those employees plainly and unmistakably within their

terms." *Nordquist v. McGraw-Hill Broadcasting Co.*, 38 Cal. App. 4th 555, 562

(1995); *see generally Lopez*, 2010 WL 728205, at *3 (N.D. Cal. Mar. 1, 2010).

An employee qualifies for exemption if: (a) his or her "duties and

responsibilities involve the management of the enterprise in which he/she is employed

. . .;" and (b) he or she "customarily and regularly directs the work of two or more

other employees herein;" and (c) he or she "has the authority to hire or fire other

employees or [his or her] suggestions and recommendations as to the hiring or firing

[are] given particular weight"; and (d) he or she "customarily and regularly exercises

23.

discretion and independent judgment;" and (e) he or she is "primarily engaged in duties which meet the test of exemption." Wage Order 7-2001 (a)-(e); Cal. Code Regs. tit. 8, § 11090(1)(A)(1).  "Exempt" employees "must also earn a monthly salary equivalent to no less than two (2) times the state minimum. Wage Order 7-2001(f).

Defendant classified Plaintiff as an "exempt" employee under the executive exemption of Industrial Welfare Commission Wage Order 7-2001. Defendant argues that even assuming Molina provided credible evidence that he worked overtime or was not provided with full meal period breaks, he was not entitled to overtime or breaks because he was not properly classified as an exempt executive employee. (Dkt. No. 177 at 41.)

Plaintiff argues that Defendant failed to meet its burden for all the workweeks between July 20, 2008 to March 14, 2009 because Plaintiff contemporaneously indicated on a workweek by workweek basis between July 20, 2008 to March 14, 2009 that he was not primarily engaged in exempt duties, but rather was engaged in nonexempt duties due to insufficient hourly employees in the store to do the work in the allotted hours." (Dkt. No. 156 at 2.) The Court will examine the requirements of Wage Order 7-2001 in turn.

i.    Plaintiff managed an entire establishment

Plaintiff did not object to Defendant's assertions that he managed an entire establishment. (Dkt. No. 174 ¶ 83.)  In addition, Dollar Tree presented credible testimony showing that Molina, as the store manager, was responsible for running the

entire store.  Accordingly, the Court finds this prong has been established.

              ii.    Plaintiff customarily and regularly directed more than 2 full time employees

Plaintiff did not object to Defendant's assertions that he customarily and regularly directed employees. (Dkt. No. 174 ¶¶ 84-85.) The Court finds Molina's resume, Exhibit 3, describing his duties while at Dollar Tree to be credible and revealing.  Mr. Molina stated that he managed up to 40 employees, overseeing "all aspects of the business" "training associates" and "delegation of tasks".  He admitted using his judgment to schedule workers, cashier hours, freight processors and sales recovery personnel.  The Court credits this testimony as it is corroborated by exhibits 143, 248 and McDearmon's testimony regarding assistant store manager and store manager training.  Thus, the Court finds this prong to be met.

              iii.    Plaintiff had the authority to hire and fire

Plaintiff did not object to Defendant's assertions that he had the authority to hire, fire and advance employees and that his suggestions or recommendations were given particular weight. (Dkt. No. 174 ¶ 86.) In addition, Molina admitted this in his testimony.  The Court credits this testimony as it is corroborated by Dollar Tree training materials, Exhibits 3, 60, 122, and Dollar Tree testimony.  Accordingly, the Court finds this Wage Order requirement to be met.

              iv.    Plaintiff exercised discretion and independent judgment

Plaintiff did not object to Defendant's assertions that "he customarily and

regularly exercised discretion and independent judgment with respect to planning for his store, managing his payroll, time and attendance, inventory and ordering, merchandising . . ." (Dkt. No. 174 ¶¶ 87-89.) The Court credits the testimony of Prettyman who explained that store managers were vested with authority to organize a large portion of the store.  Dollar Tree vested Molina with discretion to create certain "end caps" and organize aisles.  Mr. McDearmon's testimony regarding the assistant store manager and store manager training provides circumstantial evidence that Molina exercised independent judgment and discretion.  Further, Mr. Prettyman also testified that Dollar Tree  permits a store manager to choose which items to order, and in what quantities.  Mr. Peachey's testimony and the iVisit exhibits also support this conclusion.  Accordingly, the Court finds Molina to have exercised discretion and independent judgment.

> v.    Plaintiff's monthly salary exceeded two times California's minimum wage

California law requires, that an executive employee "earn a monthly salary equivalent of no less than two times the state minimum wage for full-time employment." 8 Cal. Code Regs. § 11040(1)(A). Plaintiff stipulated to this fact and posed no objections in its response to Defendant's memorandum of contentions of law and fact. (Dkt. No. 174 ¶¶ 90-92.)  Accordingly, the Court finds this element of the Wage Order requirement has been met.

> vi.    Molina was primarily engaged in exempt tasks.

The California Wage Order incorporates the definitions set forth in the regulations promulgated under the FLSA. 8 Cal. Code Regs. § 1070 1(A)(1)(e). Specifically, the Wage Order incorporates the following definition of exempt tasks:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

"[T]he trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999).

Defendant argues that Plaintiff's failure to meet their realistic expectations is due to his substandard performance as a manager. *Korte v. Dollar Tree Stores, Inc.*, No. CIV. S-12-541 LKK, 2013 WL 2604472, at *7 (E.D. Cal. June 11, 2013) (finding Dollar Tree's argument credible that the plaintiff "spent more than 50 percent of his time on non-exempt functions because he failed to meet the company's realistic

27.

1    expectations for job performance").

2

3        This element forms the centerpiece of the parties' dispute.  First, the Court does

4    not credit Molina's testimony that he predominately engaged in non-exempt activities.

5    Mr. Molina consistently certified "yes" that he was spending more than 50 per cent of

6    his time on supervisory duties.  The Court finds Mr. Molina was not coerced into

7

8    certifying "yes".  Molina certified over 144 times "yes." *See* Exhibits 14, 17. The

9    Court also finds that Molina did not receive discipline or a reduction in pay as a result

10   of certifying "no" on those occasions.  Specifically, the Court believes the testimony

11   of Balderas and Johnson which supports this conclusion.  In addition, Molina hired

12   and fired employees, trained employees, completed the work schedule, planned for

13   freight deliveries, and outlined and organized the layout of the store as outlined by

14

15   Dollar Tree exhibits. Mr. Prettyman's testimony further supports the conclusion that

16   Molina exercised judgment in ordering and organizing the store. Exhibit 3 supports

17   this conclusion.

18

19       In addition, Mr. Pearson's testimony reflects detailed, realistic expectations for

20

21   the average worker based upon a comprehensive time study.  Pearson watched

22   thousands of hours of tape which led to realistic expectations of employee task hours.

23   Therefore, the Court concludes, as an independent basis that Dollar Tree has carried

24

25

26

27

28

its burden to show that Molina was properly categorized as an "exempt" employee.[6]

### d.  Molina's fails to show California Labor Code Violations.

Plaintiff also alleges claims for failure to: (1) pay overtime, in violation of California Labor Code sections 510, 1194, 1198; (2) provide accurate itemized statements, in violation of California Labor Code section 226; and, (3) pay wages, in violation of California Labor Code section 203.  As detailed previously, Plaintiff has failed to carry his burden of proof and Dollar Tree properly classified Molina as an exempt employee. As a result, these claims necessarily fail.

### e.  Molina Fails to Show He is an Appropriate Representative to Seek a Violation of the Private Attorneys General Act (Cal. Labor Code Sections 2698, et seq.) ("PAGA")

Plaintiff brings this representative action claim under California Labor Code section 2699, ("PAGA"), on behalf of the State of California with respect to themselves and all other individuals who are or were employed by Defendant as "Store Managers" during the applicable statutory period. Under PAGA, Plaintiff is deputized to recover civil penalties for California Labor Code violations. Cal. Lab. Code § 2699(a); *see Arias*, 46 Cal. 4th at 986. Plaintiff's PAGA claim is limited to the last 13 pay periods or 26 weeks of Plaintiff's employment; from July 20, 2011 through December 31, 2011 (the "PAGA Period"). (Dkt. No. 176 at 29.)

---

[6] Given the Court's findings of fact, it need not address each of Plaintiff's objections.  To the extent inconsistent with the Court's Findings of Fact and Conclusions of Law, Plaintiff's objections are overruled.

Plaintiff is acting "as the proxy or agent of the state's labor law enforcement agencies" seeking civil penalties "that otherwise would have been assessed and collected by the [LWDA]." *Arias*, 46 Cal. 4th at 986; *see McKenzie*, 765 F. Supp.2d at 1231. In the Court's Order denying Defendant's motion to strike the representative allegations, the Court ruled that Plaintiff alleged to be an aggrieved employee and as such he had standing to bring this claim. (Dkt. No. 95 at 18.) As detailed previously, Plaintiff did not prove at trial he was an aggrieved employee, therefore may not pursue a representative action under PAGA.

**f.  *Molina fails to show Unfair Competition in Violation of California Business and Professions Code § 17200, et seq., ("UCL").***

The UCL "allows recovery for 'any unlawful, unfair or fraudulent business act or practice....' An action based on this state statute 'borrows' violations of other laws when committed pursuant to business activity. *Harris v. Investor's Bus. Daily, Inc.*, 138 Cal. App. 4th 28, 32-33, 41 Cal. Rptr. 3d 108, 111 (2006) (quoting *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992)).

Plaintiff seeks unpaid overtime and meal period wages for the four years prior to the filing of their complaint under California Business & Professions Code section 17208. Plaintiff argues "Defendant benefitted from Plaintiff's working overtime and performing non-exempt duties and the proper award of restitution is payment of Plaintiff's back wages." (Dkt. No. 156 at 17.) Plaintiff's allegations under the UCL are premised on a violation of wage and hour violations and meal break violations.

Because Plaintiff did not bear his burden of proof at trial, and because the Court found that he was properly categorized as an exempt employee, his UCL claim fails.

Judgment is for Defendant.

**IT IS SO ORDERED.**

Dated:  May 19, 2014

_____

HONORABLE BEVERLY REID O'CONNELL
UNITED STATES DISTRICT COURT JUDGE

31.